IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **PAUL RUSESABAGINA, TACIANA** | § | |
| **MUKANGAMIJE, ANAISE** | § | |
| **UMUBYEYI KANIMBA, AIMEE-LYS** | § | |
| **RUSESABAGINA, CARINE ISERE** | § | |
| **KANIMBA, AIME-DIANE** | § | |
| **RUSESABAGINA, TRESOR** | § | **Civil Action No. 5:20-1422-XR** |
| **RUSESABAGINA, AND ROGER** | § | |
| **RUSESABAGINA,** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **GAINJET AVIATION, S.A.,** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL RE-DEPOSITION OF
CAPTAIN RAMSEY SHABAN KHDAIR AND TO TAKE ADDITIONAL DEPOSITIONS**

It is common ground that it was improper for GainJet to object to the jurisdictional discovery requests and instruct its Rule 30(b)(6) designee not to answer deposition questions unless this Court had previously prohibited the discovery. *See* F.R.C.P. 30(c). The Court's prior Order held that Plaintiffs are entitled to jurisdictional discovery on "the sole issue with regard to this specific flight" including, but not limited to, what "the Rwandan government gave to GainJet with regard to the Dubai charter." Status Conf. Proceedings Before the Hon. Xavier Rodriguez 15:19-16:1 (attached as Ex. A). Plaintiffs' discovery requests and deposition questions fit comfortably within that scope.

## STATEMENT OF FACTS

The mobile phone GainJet used for communicating with the Rwandan government and Mr. Rusesabagina—which may have contained communications sent to Texas—was "destroyed" after this lawsuit was filed.[1] The GainJet aircraft in question was sitting on the tarmac in Dubai for nine days, waiting for a passenger to arrive, supposedly with no passenger information and no explanation from the Rwandan government as to why the aircraft should remain grounded.[2] GainJet ignored its own charter protocol regarding both the issuance of passenger travel documents and the collection of passenger passport information.[3] GainJet then changed its departure date several times before the Dubai-Kigali flight at Rwanda's behest, again with no explanation why.[4] GainJet also changed its flight crew[5] without reflecting this change in the flight manifest,[6] which inexplicably did not list the passengers' names.[7] Both before he boarded

---

[1] *See* Exhibit B, Khdair Dep. 101:24-102:3.
[2] *Id.* at 48:21-49:1.
[3] *Id.* at 37:9- 38:25, 39:19-40:17.
[4] *Id.* at 58:20-24, 59:3-4.
[5] *Id.* at 63:13-25
[6] *Id.* at 67:3-10.
[7] *Id.* at 66:19-24.

the aircraft and when he was on board GainJet lied to Mr. Rusesabagina that they were flying to Burundi, not Rwanda.[8] GainJet then refused to investigate[9] this internationally condemned kidnapping that occurred on its aircraft. Now GainJet tries to prevent the tying of these facts to Texas—where its torts originated—by asserting a brick wall between merits-based and jurisdiction-based discovery. No such wall exists, and Plaintiffs are entitled to the requested discovery.

## I.      ENTANGLEMENT WITH THE MERITS IS NO REASON TO DENY JURISDICTIONAL DISCOVERY.

Plaintiffs' discovery requests are narrowly tailored to personal jurisdiction. They seek information relating only to the interactions and communications relevant to torts, such as fraud, false imprisonment, and conspiracy, *that began in Texas*.

Those requests necessarily overlap with the merits of Plaintiffs' claims. GainJet is wrong in asserting (ECF 63, D. Opp. Br. at 4) that it need not answer any requests or questions that go to both the merits and jurisdiction. *See, e.g.*, *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982) ("When ... personal jurisdiction is predicated on the commission of a tort within the state ... the jurisdictional question involves some of the same issues as the merits of the case"); *In re Cathode Ray Antitrust Litig.*, No. C-07-5944, 2018 WL 4775595, at *4 (N.D. Cal. 2018) ("Simply because the discovery requested may reveal facts relevant to both jurisdiction and the merits does not preclude that discovery from being jurisdictional in nature.").

---

[8] When Mr. Rusesabagina asked, before boarding the flight, where the flight was headed, had GainJet truthfully answered "Kigali" instead of "Burundi," he would not have boarded the aircraft and the entire conspiracy would have collapsed. So GainJet was plainly in on Rwanda's kidnapping scheme from the very beginning. *See* ECF 22, Amended Compl. at ¶131.
[9] Exhibit B, Khdair Dep. 11:10-12, 16:12-15.

The rule permitting such discovery is particularly salient here because Plaintiffs allege jurisdiction under the *Calder* "effects" test. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (jurisdiction exists based on acts outside the state where the consequences "are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct"); *Arthur v. Stern*, No. CIV.A. H-07-3742, 2008 WL 2620116, at *10 (S.D. Tex. June 26, 2008) (coconspirators' actions outside state are relevant for jurisdiction). GainJet directly aimed its out of state conduct at Texas via its role in a conspiracy the object of which was to lure and abduct Mr. Rusesabagina *from Texas* and directly cause harm to Mr. Rusesabagina *in Texas* the moment he was tricked into *leaving his Texas home*.

The questions defense counsel improperly instructed the witness not to answer[10] involved topics such as GainJet's conduct and communications on board the Dubai-Kigali flight, which is directly relevant under the *Calder* effects test and conspiracy law. For example, GainJet's misrepresentations to Mr. Rusesabagina and its communications with Rwandan agents may support jurisdiction by showing its awareness that Mr. Rusesabagina was travelling from Texas and that it was participating in a unified scheme to reach into Texas to abduct Mr. Rusesabagina and deliver him to its coconspirators in Rwanda. That these facts will also help establish liability does not make them irrelevant to jurisdiction.

The other subjects on which GainJet instructed its witness not to answer are at least as clearly directed to jurisdiction. For example, the designee refused to answer questions as to whether crew members communicated with coconspirators or Mr. Rusesabagina, which could reveal GainJet's knowledge of Mr. Rusesabagina's Texas residence. *See* Exhibit B, Khdair Dep.

---

[10] *Wilson v. Martin City Hosp. Dist.,* 149 F.R.D. 553, 555 (W.D. Tex. 1993) (As a general rule, one should refrain from instructing a witness not to answer a question).

84:21-24); *id*. at 33:5-8 (GainJet contacts with Rwanda regarding the flight). These subjects clearly go to whether GainJet "knew or should have known that by entering into the relationship [it] was exposing [itself] to the risk that [it] could be haled into court in the forum state." *Arthur*, 2008 WL 2620116, at *10; see also *Eagle Metal Prod., LLC v. Keymark Enterprises, LLC,* 651 F. Supp. 2d 577, 592-96 (N.D. Tex. 2009).

The designee refused to answer proper questions, so he must sit for another deposition. *Canyon Furniture Co. v. Rueda Sanchez*, No. SA-18-CV-00753-OLG, 2018 WL 6265041, at *17 (W.D. Tex. Nov. 8, 2018) ("[b]y instructing [Defendant] not to answer, Defendants' counsel risked that a second jurisdictional deposition of [Defendant] might be necessary").

## II.   THE WITNESS'S UNPREPAREDNESS JUSTIFIES ANOTHER DEPOSITION AND THE DEPOSITIONS OF OTHER EMPLOYEES

GainJet argues that Captain Khdair "had no need to prepare to answer questions outside the scope of this jurisdictional issue"[11] and purports to not understand why "Plaintiffs believe that conduct on a flight from the UAE to Rwanda"[12] is within this scope. But the Court has already ruled that Plaintiffs are entitled to discovery "with regard to this specific flight." Ex. A, at 15:19-16:1.[13] GainJet simply refuses to acknowledge that Plaintiffs assert specific jurisdiction under the *Calder* effects test and conspiracy law.

Courts use the *Calder* "effects" test to determine whether a defendant's *out-of-state acts* are sufficient for it to reasonably anticipate being subject to litigation in the state. *Caris MPI, Inc. v. Eastman*, No. 3:14-CV-396-N, 2014 WL 12584417, at *3 (N.D. Tex. July 28, 2014). *See*

---

[11] D. Opp. Br. at 9.

[12] *Id.* at 7.

[13] Contrary to GainJet's assertion (D. Opp. Br. at 6) Plaintiffs have asserted throughout this litigation that the Dubai-Kigali flight is relevant to specific jurisdiction. *See, e.g.* ECF 28, P. MTD Opp. at 12-18.

ECF 28, Plaintiffs' MTD Op. at 12-18. Out-of-state acts, including GainJet and its coconspirators'[14] communications during the flight, are plainly relevant to specific jurisdiction.

Similarly, plaintiffs can establish personal jurisdiction based on a conspiracy by showing that the "likely result" of conspirators' out-of-state actions was to cause harm in Texas. *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2012 WL 12896486, at *18-21 (W.D. Tex. Mar. 29, 2012), report and recommendation adopted, No. CV SA-11-CA-0009-FB, 2012 WL 12895750 (W.D. Tex. Sept. 19, 2012). That enquiry clearly includes information regarding those actions.

GainJet cannot shirk its duty to provide a prepared 30(b)(6) witness on these topics—"I didn't need to do anything,"[15] "there is nothing to really look into"[16]—simply by claiming that the flight in question was "normal"[17] and pretending that the *Calder* effects test doesn't exist.[18]

The Court should grant the motion to compel.

Date: June 24, 2022                    Respectfully submitted,


By*: /s/ Robert C. Hilliard*
Robert C. Hilliard
State Bar No. 09677700
bobh@hmglawfirm.com
**HILLIARD MARTINEZ GONZALES LLP**
719 S. Shoreline Blvd.

---

[14] *Casares v. Agri-Placements Int'l, Inc*., 12 F. Supp. 3d 956, 968-70 (S.D. Tex. 2014) (plaintiffs established sufficient minimum contacts when they "made a prima facie showing that [defendant] was a 'primary participant in an alleged wrongdoing directed' at Texas residents").
[15] Exhibit B, at 16:12-15, 11: 8-12.
[16] *Id.* at 11:10-12.
[17] *Id.* at 10:7, 11:13-18, 15:21-22, 16:20-23, 17:15, 27:3, 29:13, 29:21, 30:2, 73:7-8, 73:11-12.
[18] *Willoughby v. Cribbs*, No. CV H-13-1091, 2015 WL 12777188, at *1 (S.D. Tex. Feb. 6, 2015) ("Some of plaintiff's counsel's questions may have pushed the limits of the topics designated for the 30(b)(6) witness. However, the deposition transcript indicates the witness was not fully prepared even on the designated topics, and in any event defense counsel should not have instructed the witness not to answer.").

Corpus Christi, Texas 78401
Phone: (361) 882-1612
Fax: (361) 882-3015

**hmgservice@hmglawfirm.com\*\***
**\*\*<u>Service at this email address only</u>**

Steve D. Shadowen
PA State Bar No. 41953
steve@hilliardshadowenlaw.com
(*Pro hac vice* )
Tina Miranda
State Bar No. 24026139
tmiranda@hilliardshadowenlaw.com
*(Pro hac vice)*
Nicholas W. Shadowen
State Bar No. 24110348
nshadowen@hilliardshadowenlaw.com
*(Pro hac vice)*
**HILLIARD SHADOWEN LLP**
1135 W. 6th Street, Suite 125
Austin, Texas 78703
Phone: (717) 903-1177

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I, Robert C. Hilliard, attorney for the plaintiffs, hereby certify that on the 24th day of June, 2022, a true copy of the foregoing was filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing.